IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RUBEN GONZALEZ, JR., and wife,
SYLVIA GONZALEZ,

      Plaintiffs,

v.                              No. CIV 05-531 LFG/RLP

BRIDGE MACHINE COMPANY, INC.
and TYSON FOODS, INC.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

### Introduction

THIS MATTER is before the Court on separate motions for summary judgment filed by Defendant Bridge Machine Company, Inc. ("Bridge Machine") and Defendant Tyson Foods, Inc. ("Tyson") [Doc. Nos. 27 and 31.][1] Bridge Machine filed its motion for summary judgment on March 17, 2006. Plaintiffs Ruben Gonzalez, Jr. and Sylvia Gonzalez did not file a response in opposition to Bridge Machine's motion and the deadline for doing so has elapsed. [*See* Doc. No. 34.] Tyson filed its amended motion for summary judgment on March 28, 2006. Again, Plaintiffs did not file a response. Their deadline for filing a response was April 14, 2006, and that date, too, has elapsed. [*See* Doc. No. 35.] After careful consideration of the pertinent law and both motions for summary

---

[1] On March 10, 2006, the Court denied Tyson's initial Motion for Summary Judgment, without prejudice, [Doc. Nos. 9, 26] because Tyson failed to support its motion with any type of admissible evidence. However, the Court granted Tyson additional time to file an amended motion for summary judgment that was properly supported, and Tyson filed this amended motion for summary judgment, accompanied by affidavit testimony.

1

judgment, along with the attachments to pleadings, the Court concludes that both Defendants' motions for summary judgment should be granted with the result that Plaintiffs' Complaint is dismissed against Tyson and Bridge Machine, with prejudice.[2]

## **Factual and Procedural Background**

Plaintiffs' complaint arises out of a tragic work-place accident wherein Plaintiff Ruben Gonzalez, a Tyson employee, lost part of his arm. Mr. Gonzalez had just been employed by Defendant Tyson and was working his first shift on August 11, 2003, at Tyson's plant in Santa Teresa, New Mexico. [Doc. Nos. 1, 16, Complaint and Initial Pretrial Report.] Plaintiffs' complaint alleges that during his August 11 shift, Mr. Gonzalez was assigned to working with a "con-vey cuber" (a piece of machinery used to tenderize and "cube" boneless meat portions into "cube steaks"; also known as a meat macerator) and was specifically instructed to pick up some meat with a hook and place it on the con-vey cuber. [Doc. No. 1, ¶¶ 8, 10.] On that date, some meat became jammed in the equipment. Mr. Gonzalez alleges that Tyson instructed his co-worker to attempt to free the jam but that both Mr. Gonzalez and his co-worker took turns attempting to "un-jam" pieces of meat which involved placing their unprotected hands near unguarded rotating knives. [Id. at ¶ 11.] The result was that Mr. Gonzalez placed his hand and arm in close proximity to the rotating knife blades of the cuber, and his arm was pulled into the machine, caught between the bladed rollers, and amputated above the elbow. [Doc. No. 16, Initial Pretrial Report.]

The con-vey cuber was designed and manufactured by Defendant Bridge Machine and owned by Tyson at the time of Mr. Gonzalez's accident. [*See* Doc. No. 16, IPTR.]

---

[2] Defendant Tyson's motion for a pre-trial conference, filed April 6, 2006 [Doc. No. 33] is denied as moot.

Plaintiffs sued both Tyson and Bridge Machine. The complaint alleges strict liability against Bridge Machine based on allegations that the meat macerator machine was unreasonably dangerous and in defective condition and that Bridge Machine defectively designed, manufactured and marketed the equipment in question. Plaintiffs also bring a negligence claim against Bridge Machine based on the same or similar allegations. Plaintiffs sue Tyson for negligence, alleging *inter alia* that workers' compensation is not Mr. Gonzalez's exclusive remedy. Finally, Plaintiffs allege that Tyson engaged in spoliation of evidence by intentionally altering the equipment at issue so as to defeat a potential lawsuit against it. Plaintiffs request an award of actual and special damages, punitive damages against both Defendants, and pre-judgment and post-judgment interest. [Doc. No. 1, Complaint.]

Initially, Plaintiffs were represented by counsel. The parties exchanged initial disclosures as required by the federal rules of civil procedure and participated in a Rule 16 scheduling conference. The close of discovery was extended from December 30, 2005 until January 31, 2006. [Doc. No. 19.] In September 2005, Plaintiffs provided some answers and objections to Tyson's discovery requests. [Doc. Nos. 17 and 18.] These were the only discovery requests served in the case.

On October 28, 2005, Plaintiffs' counsel filed a motion to withdraw as counsel, without having successfully obtained Plaintiffs' position on the request. [Doc. No. 20.] In a letter to counsel, dated November 7, 2005, the Court required Plaintiffs' counsel to inform the Gonzalezes of the ramifications of permitting their attorneys to withdraw from the case. On November 7, 2005, Plaintiffs' attorneys filed an amended unopposed motion to withdraw as counsel after complying with the Court's conditions and obtaining the Gonzalezes' written agreement to the motion. [Doc. No. 21.] Plaintiffs' counsel attached a letter to the Gonzalezes as part of the amended motion to withdraw. That letter informed the plaintiffs that if they did not retain new counsel, each Plaintiff

3

could only represent himself or herself *pro se*. In other words, one non-attorney Plaintiff was not allowed to represent the other in this litigation. The Gonzalezes were informed that they were required to comply with all applicable federal court rules, as well as adhere to obligations concerning any and all discovery matters, and attend all hearings and court proceedings. On December 5, 2005, the Court permitted Plaintiffs' counsel to withdraw, with the result that the Gonzalezes proceeded *pro se* as of that date.

Plaintiffs did not file any pleadings since that date. According to Tyson, it served interrogatories and document requests on August 10, 2005 to which it received no response. [Doc. No. 31, ¶ 14]. However, the court's docket indicates Plaintiffs served answers and objections to these discovery requests in September 2005. [Doc. No. 18.] Thus, it is not clear whether there is outstanding discovery. In any event, Tyson did not file a motion to compel with respect to Plaintiffs' September 2005 responses and objections.

Plaintiffs *pro se* did not engage in any discovery, did not serve any discovery requests on Defendants, and did not identify any expert witnesses. They did not respond to any motions for summary judgment that Defendants filed. They did not seek any extension of time within which to respond from opposing counsel or the Court. Essentially, Plaintiffs have taken no action in this case since the withdrawal of their attorneys. A jury trial (which now will be vacated as a result of the Court's ruling) is scheduled to commence on June 19, 2006. [Doc. No. 32.]

## **Summary Judgment Legal Standard**

Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986).

Once the moving party meets its burden, the party opposing the motion must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510 (1986); Biester v. Midwest Health Servs, Inc., 77 F.3d 1264, 1266 (10th Cir. 1996). The party opposing the motion may not rest upon the mere denials of his pleadings to avoid summary judgment. Fed. R. Civ. P. 56(e); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

However, the Tenth Circuit has also explained that the nonmovant's burden to respond arises only where the summary judgment motion is properly "supported." Reed v. Bennett, 312 F.3d 1190, 1194 (10th Cir. 2002).

> Accordingly, summary judgment is 'appropriate' under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c). If the evidence produced in support of the summary judgment motion does not meet this burden, ' summary judgment must be denied, *even if no opposing evidentiary matter is presented.*

Id. (emphasis in original) (internal citation omitted).

Here, Plaintiffs did not respond to either motion for summary judgment. The district's local rule of procedure, D.N.M. LR-Civ 7.1(b), provides that a failure to respond to a motion constitutes consent to grant the motion. Both Defendants urge that the Court grant summary judgment on that basis.

The Tenth Circuit, however, rejects that approach. Reed, 312 F.3d at 1194. In Reed, the Circuit Court determined that granting a summary judgment because a party failed to respond in opposition, even when a response was required by the court's local rule, would constitute dismissal as a sanction. Dismissal of a lawsuit as a sanction is appropriate only in limited instances. Ehrenhaus v. Reynolds, 965 F.2d 916, 920-22 (10th Cir. 1992). Thus, the Court rejects Defendants' request to grant summary judgment because Plaintiffs failed to respond. Instead, the Court considers the motions on their merits.

The Court first decides whether each Defendant met its *prima facie* burden of demonstrating that no material issues of fact remain for trial. Reed, 312 F.3d at 1194. If so, the motions will be granted where Plaintiffs then failed to meet their burden of production in contesting the motions for summary judgment.

### Defendant Bridge Machine's Motion for Summary Judgment

Plaintiffs assert claims of strict liability and negligence against Bridge Machine. Bridge Machine admits that it manufactured the machinery at issue, identified as a con-vey cuber. Bridge

6

Machine provided affidavit testimony by the company President, Terry A. Bridge,[3] to the effect that in April 1995, Bridge Machine manufactured and sold the con-vey cuber to a company called Thorn Apple Valley, Inc. [Doc. No. 28, Ex. A, Bridge Aff.] The cuber was transported to Thorn Apple Valley in Detroit, Michigan in June 1995. [Id. at ¶ 3.] Thorn Apple Valley requested that Bridge Machine re-work the machine in about August 1995. The cuber was therefore returned to Bridge Machine in Palmyra, New Jersey and shipped back to Thorn Apple Valley in October 1995. [Id. at ¶ 4.]

Bridge Machine's President testified that when the cuber was originally shipped and later re-shipped in October 1995, the equipment had "proper guarding and interlock devices that would automatically shut the machine down if the guards were opened or removed." [Id. at ¶ 5.] Bridge Machine provided photographs of the cuber as it appeared during that time period, i.e., from June to October 1995. After October 1995, Bridge Machine's President testified that the company had no further involvement with that particular cuber, that it provided no subsequent repair or service work on the equipment, and that it had no knowledge that the cuber was later transported to New Mexico or that Tyson possessed that cuber.

Mr. Bridge also testified that he examined color photographs taking of the cuber after Mr. Gonzalez's accident. He observed that the photographs showed that the cuber had been "substantially modified or altered at some time after leaving the Bridge Machine Company facilities." [Id. at ¶ 11.] For example, Mr. Bridge states that Bridge Machine did not supply the sensor and

---

[3]Mr. Bridge also provided affidavit testimony that he has expertise in the areas of design, manufacture, and safety of meat processing equipment based on his 40 years in the business and involvement in the design, testing, manufacture, and operation of meat processing equipment, including the machinery at issue in this lawsuit. [Doc. No. 28, Ex. A., Bridge Aff.]

bracket depicted in the later photographs of the cuber and that these parts were not the "interlock devices" Bridge Machine placed on the equipment. Neither the stainless steel around the end feed belt nor the discharge cover shown in later photographs were supplied by Bridge Machine according to Mr. Bridge. [Id.] Mr. Bridge provided a list showing differences in the equipment he observed in comparing the photographs of the original cuber with photographs of the cuber taken after Mr. Gonzalez's accident.

Mr. Bridge further testified that Bridge Machine was unaware of any of the modifications or alterations that were made to the machine. He averred that, the equipment as manufactured and sold, "could not have resulted in the accident that occurred if the equipment were in the condition in which it was provided to Thorn Apple Valley." [Id. at ¶ 13.] Mr. Bridge stated in his affidavit that this is true because the "guards and interlock devices" that Bridge Machine provided with the equipment would have prevented Mr. Gonzalez from being able to reach into the equipment with his hand or a hook while the machine was running. [Id.]

Based on this affidavit testimony, Defendant Bridge Machine argues that Plaintiffs' claims of strict liability and negligence must fail because Plaintiffs cannot show that the cuber at issue was defective when it left Bridge Machine's hands. In other words, Plaintiffs have produced no evidence that any defect in the cuber existed at a point in time sufficient to charge Bridge Machine with the alleged defect.

With respect to a theory of strict liability, it is well-settled that Plaintiffs have the burden of proving a defect. Springer Corp. v. Dallas and Mavis Forwarding Co., Inc., 90 N.M. 58, 59 (Ct. App. 1976), *cert. denied*, 90 N.M. 254 (1977). "In addition to proof of a defect, there must be proof

that the defect existed at a point in time sufficient to charge a particular defendant with the defect." Id. (internal citation omitted).

Here, Bridge Machine provided admissible evidence in the form of affidavit statements that the machinery at issue, when manufactured and sold in 1995, was without defect and that, as manufactured, would have prevented the type of accident that Mr. Gonzalez suffered in 2003. Based on Mr. Bridge's testimony that the cuber had been modified, it is possible that Plaintiffs could have obtained evidence that the machine was defective at the time of Mr. Gonzalez's accident. However, Plaintiffs failed to satisfy their burden by producing any such evidence and also provided no evidence that the cuber was defective when manufactured and sold by Bridge Machine.[4]

In addition, Bridge Machine supplied evidence showing that it had no knowledge of the modifications that were made to the cuber after October 1995, and that it did not provide any service or repair work to the machine subsequent to that date. This testimony is unrebutted. Mr. Gonzalez suffered the injuries in 2003, some eight years after Bridge Machine last worked on the equipment. There is uncontested evidence that the machine was provided with appropriate safeguards when Bridge Machine last saw the cuber in late 1995. Thus, no genuine issue of material fact exists for trial with respect to the question of whether any defect that may have existed as the result of later repair work done by other companies existed at a time sufficient to charge Bridge Machine with the alleged defect. *See also* State Farm Fire & Casualty Co., 83 N.M. 516, 518 (Ct. App.) ("Under the theory

---

[4]In addition to failing to provide any opposition to Bridge Machine's motion for summary judgment, Plaintiffs never identified an expert witness who might have supplied expert testimony on these issues. However, based on affidavit testimony attached to Tyson's motion for summary judgment, it appears that Plaintiffs' former counsel had a potential expert inspect the machinery or at a minimum, an inspection date was arranged for the expert to examine the machinery.

of strict liability, a defect in the product when it leaves the maker's control and the causal connection between the defect and an injury must be proved."), *cert. quashed*, 83 N.M. 740 (1972).

Bridge Machine also correctly notes that in New Mexico the following jury instruction must be given where there is an issue raised concerning a subsequent change or alteration of a product and sufficient evidence is produced to permit a finding that the change or modification to the product was a cause of the plaintiff's injury.

> In order for a supplier . . . to be liable, the injury must have been caused by a condition of the product which was not substantially changed from the condition in which the . . . supplier placed the produce on the market or in which the supplier could have reasonably expected it to be used. . . . For substantial change in the product to relieve a supplier of liability, the change itself must be a cause of the harm done.

UJI 13-1422.

Plaintiffs came forward with no evidence, much less admissible evidence, raising a genuine issue of material fact regarding whether: the cuber was defective in 2003; any alleged defect was attributable to Bridge Machine; or, any defect attributable to Bridge Machine caused the injury. Under either a negligence or strict liability theory, Plaintiffs must prove that the machinery, when used in 2003, was without substantial change in the condition in which Bridge Machine supplied it. *See* Springer Corp., 90 N.M. 59; State Farm Fire & Cas. Co., 83 N.M. at 518; Tafoya v. Las Cruces Coca-Cola Bottling Co., 59 N.M. 43, 47-48 (1955); Restatement (Second) of Torts § 402A(1)(b) (1965). Because Plaintiffs did not come forward with such evidence raising a triable issue, Bridge Machine is entitled to summary judgment on both claims, and its motion for summary judgment will be granted. Therefore, Plaintiffs' claims against Bridge Machine will be dismissed.

**Defendant Tyson's Amended Motion for Summary Judgment**

As noted above, Plaintiffs allege that Mr. Gonzalez's employer, Tyson, instructed him to work with the cuber on the date in question. Plaintiffs also claim that Tyson did not provide any training or instruction to Mr. Gonzalez on the use and operation of the machinery. Plaintiffs further assert that Tyson knew the cuber was unreasonably dangerous and defective and posed an unreasonable risk of injury to Mr. Gonzalez. Plaintiffs allege that Tyson had a duty to provide a safe work environment for its employees and that it breached that duty by failing to take appropriate measures to protect its employees from the unreasonably dangerous and defective condition of the cuber. Last, Plaintiffs assert that Tyson intentionally altered the machine after the accident in an attempt to defeat this lawsuit. [Doc. No. 1.]

In Tyson's motion for summary judgment, it sets forth a number of material facts substantiated through affidavit testimony. Plaintiffs did not file any opposition to the motion and submitted no evidence to raise a triable issue or to demonstrate any factual dispute. Therefore, Tyson's unrebutted facts are deemed admitted. Those facts state that on August 11, 2003, Mr. Gonzalez's only assigned job was to open packages of meat and place the meat on the conveyor belt that ran up to the cuber. [Doc. No. 31, Ex. B, Martinez Aff.] Mr. Gonzalez's supervisor, Gabriel Martinez, provided affidavit testimony that he instructed Mr. Gonzalez "not to operate, shut down or clean the macerator." [Id.] Martinez further stated that at the end of the August 11 evening shift "for some unknown reason, [Mr. Gonzalez] climbed onto the catwalk next to the meat macerator and placed his arm in or on the meat macerator, injuring his arm." [Id., at ¶ 10.] Martinez testified that he investigated the accident and learned that earlier in the shift, an experienced machine operator observed Mr. Gonzalez climb onto the catwalk next to the meat macerator, at which point the

11

operator instructed Mr. Gonzalez to stay off the catwalk because it was dangerous. Martinez stated that "[a]t no time did I or any other Tyson employee intend Mr. Gonzalez to climb onto the catwalk next to the meat macerator to look into or clean the machine where the accident occurred." [Id. at ¶ 13.]

Tyson also provided undisputed evidence that Tyson was self-insured for all Workers' Compensation claims and met all requirements of the New Mexico Workers' Compensation Act. [Doc. No. 31, Ex. A, Apodaca Aff.] Mr. Gonzalez requested, received and continues to receive medical benefits and indemnity payments from Tyson, in accordance with the Act, as a result of the accident. [Id.]

Finally, Tyson provided affidavit testimony that after the accident, Tyson took apart the meat macerator for inspection, cleaning and repair. [Martinez Aff., at ¶ 14.] Mr. Martinez averred that neither he nor anyone at Tyson intentionally altered the machinery at issue and further that there was no intent of disrupting or defeating a potential lawsuit. In addition to this affidavit testimony, Tyson's corporate attorney provided an affidavit stating that she personally arranged for Plaintiffs' former two attorneys and Plaintiffs' photographer to take photos of the meat macerator on January 17, 2004 prior to any modification to the machinery. Tyson's attorney also arranged for Plaintiffs' former counsel and Plaintiffs' expert to inspect the meat macerator on October 23, 2004, prior to making any changes to the cuber. Tyson's attorney testified that on those dates and prior to modification, Plaintiffs had ample opportunity to photograph and inspect the meat macerator at issue. [Doc. No. 31, Ex. C, Hayes Aff.]

Tyson argues that Workers' Compensation is Plaintiffs' exclusive remedy under circumstances like these where Mr. Gonzalez sustained injuries in an accident arising out of and in the course of

employment and where there is no evidence that Tyson acted intentionally or willfully in connection with the accident. Moreover, Tyson contends that it has been paying Mr. Gonzalez in accordance with provisions of that Act.

The Workers' Compensation Act provides exclusive remedies. NMSA § 52-1-6(E).

> The right to the compensation provided for in this act . . ., in lieu of any other liability whatsoever, to any and all persons whomsoever, for any personal injury accidentally sustained . . ., shall obtain in all cases where the following conditions occur:
> A. at the time of the accident, the employer has complied with the provisions thereof regarding insurance;
> B. at the time of the accident, the employee is performing service arising out of and in the course of his employment; and
> C. the injury . . . is proximately caused by accident arising out of and in the course of his employment and is not intentionally self-inflicted.

NMSA § 52-1-9.

Under the Act, the employer and the employee surrender their rights to any other method, form or amount of compensation or determination on account of personal injuries of the worker except as provided in the Act.

> Such compliance with the provisions of the Workers' Compensation Act, including the provisions for insurance, shall be, and construed to be, a surrender by the employer and the worker of their rights to any other method, form or amount of compensation or determination thereof or to any cause of action at law, suit in equity or statutory or common-law right to remedy or proceeding whatever for or on account of personal injuries . . .than as provided in the Workers' Compensation Act and shall be an acceptance of all of the provisions of the Workers' Compensation Act and shall bind the worker himself
> . . . .

NMSA 1978 § 52-1-6(D).

Although Plaintiffs did not file any opposition to Tyson's motion for summary judgment, their Complaint appears to describe an attempt to bring a "Delgado claim." In <u>Delgado v. Phelps Dodge</u>

Chino, Inc., 131 N.M. 272 (2001), the New Mexico Supreme Court permitted a worker to sue his employer in tort for an injury received within the scope of employment that would otherwise be compensable only under the Act. However, to do so the employee was required to establish the employer "intentionally inflicted or wilfully caused the worker to suffer the injury." Dominguez v. Perovich Properties, Inc., 137 N.M. 401 (Ct. App.) (*discussing* a Delgado claim), *cert. denied,* 137 N.M. 522 (2005). In Delgado, the Supreme Court set out the following test:

> willfulness renders a worker's injury non-accidental, and therefore outside the scope of the Act, when: (1) the worker or employer engages in an intentional act or omission, without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker; (2) the worker or employer expects the intentional act or omission to result in the injury, or has utterly disregarded the consequences; and (3) the intentional act or omission proximately causes the injury.

Dominguez, 137 N.M. at 404 (*citing* Delgado, 131 N.M. 272).

Here, to the extent that Plaintiffs attempt to bring a Delgado claim against Tyson, thereby escaping the exclusivity provisions of the Workers' Compensation Act, that attempt fails. Tyson presents undisputed evidence that it complied with the provisions of the Workers' Compensation Act, including the provisions for insurance, and that Mr. Gonzalez has been and currently is receiving workers' compensation for his injury.

In addition, there simply is no evidence presented by Mr. Gonzalez to show that Tyson engaged in intentional acts or omissions without just cause or excuse that were reasonably expected to result in Mr. Gonzalez's injury. Tyson presented undisputed admissible evidence that Mr. Gonzalez was instructed not to work on the cuber and that he was given specific job duties that did not include assignment to the cuber. If Mr. Gonzalez had presented evidence to support his claim

that he was assigned to the cuber without training and that it was expected by Tyson that he would attempt to "un-jam" the meat macerator, perhaps he might have presented a Delgado claim that would survive summary judgment. However, his unsupported allegations, without more, and his failure to contest the material facts presented by Tyson do not satisfy the requirements set out in Delgado. Moreover, the work tasks that Tyson did assign to Mr. Gonzalez could not reasonably have been expected to result in the amputation of his arm.

Plaintiffs also present no evidence to satisfy the second prong of the Delgado test, i.e., that Tyson subjectively expected its acts or omissions to result in the injury or that it utterly disregarded the consequences of its acts or omissions. The evidence presented demonstrates that Tyson did not intend for Mr. Gonzalez to work on the cuber and that his supervisor expressly directed him not work on that machine. Without evidence of an intentional act or omission on the part of Tyson or evidence that Tyson utterly disregarded the consequences of its acts or omissions, Plaintiffs cannot establish the third prong of the Delgado test, i.e., proximate cause.

The Court also notes that Mrs. Gonzalez attempts to raise a derivative action for loss of consortium as a result of the injury to her husband. This claim also must fail because the Worker's Compensation Act bars derivative actions for loss of consortium by the spouse of an injured worker. Singhas v. New Mexico State Highway Department, 124 N.M. 42, 44-45 (1997) (holding that a spouse may not bring an action for loss of consortium against the employer under the Act).

With respect to the spoliation claim against Tyson, there is no evidence to show that Tyson wilfully or intentionally destroyed evidence. The unchallenged evidence is that Tyson permitted Plaintiffs and their expert to inspect and photograph the machinery before any changes or repair were

made to the cuber. Without any evidence to rebut Tyson's showing, Plaintiffs fail to raise a genuine issue of material fact and the claim must be dismissed.

The Court concludes for all of the above-stated reasons that Defendant Tyson's amended motion for summary judgment will be granted, and that Plaintiffs' claims dismissed.

IT IS THEREFORE ORDERED that Defendant Bridge Machine Company, Inc.'s Motion for Summary Judgment [Doc. No. 27] is GRANTED and Defendant Tyson Foods, Inc.'s Amended Motion for Judgment [Doc. No. 31] is GRANTED with the result that Plaintiffs' Complaint is dismissed, WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant Tyson Foods, Inc.'s motion for pretrial conference [Doc. No. 33] is DENIED as MOOT.

*(signature)*
Lorenzo F. Garcia
Chief United States Magistrate Judge